**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CURTIS BRAGG,

      Petitioner,                 Civil No. 2:16-CV-10199
                                     HONORABLE GERALD E. ROSEN
v.                               UNITED STATES DISTRICT JUDGE

DEWAYNE BURTON,

      Respondent,

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS

Curtis Bragg, ("Petitioner"), confined at the Carson City Correctional Facility in Carson City, Michigan, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his convictions for first-degree felony murder, Mich. Comp. Laws § 750.316(1)(b); conspiracy to commit armed robbery, Mich. Comp. Laws §§ M.C.L.A. 750.157a, 750.529; armed robbery, Mich. Comp. Laws § 750.529; and being a fourth felony habitual offender, Mich. Comp. Laws § 769.12. For the reasons that follow, the petition for writ of habeas corpus is DENIED.

### I. Background

Petitioner was convicted following a jury trial in the Oakland County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

Defendant's convictions arise from the death of Demetrius Lanier during an

1

armed robbery on January 26, 2010, in Southfield. The prosecution's principal witness, Richard Shannon, had rented two apartments at the North Park Towers, one on the eleventh floor and the other on the sixth floor, from where Lanier fell to his death from a sixth-floor balcony. Throughout the day on January 26, Shannon had several cellular telephone communications with codefendant Damon Bostick to arrange a marijuana transaction. At some point that day, Lanier accompanied Shannon back to Shannon's sixth-floor apartment. Bostick later arrived with defendant and a third unidentified man. After Shannon displayed the marijuana for inspection, defendant and his associates gestured as if they were pulling out money, but they instead pulled out handguns. Defendant pointed his gun at Lanier and ordered him to the ground. After a brief struggle, Shannon was subdued and bound with duct tape by Bostick and the unidentified man. Bostick demanded the location of the rest of Shannon's marijuana. Lanier was panicky and stated that more marijuana was in an upstairs apartment. Upon leaving the apartment, Bostick cautioned Lanier that if the marijuana was not there, he would call and instruct defendant to shoot Lanier. When defendant's cellular telephone rang minutes later, Lanier got up, and then he and defendant engaged in a struggle that migrated through an open door to the balcony. Although Shannon could not see what was happening outside, he heard a skirmish and heard defendant state, "oh, sh*t." Defendant and the unidentified man then fled the apartment. Lanier's body was discovered on the ground below. Lanier later died from injuries received during his fall from the balcony.

*People v. Bragg*, No. 318368, 2014 WL 7217267, at *1 (Mich. Ct. App. Dec. 18, 2014).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 498 Mich. 854, 865

N.W.2d 23 (2015).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Petitioner Bragg is entitled to habeas relief where the trial court erred in denying petitioner's motion for mistrial thereby unreasonably applied *US v. Perez*, 22 US 579 (1824) and *Groppi v. Wisconsin*, 400 US 505 (1971).

II. Petitioner is entitled to habeas relief because the state court unreasonably applied *Jackson v. Virginia*, 443 US 307 (1980) given that the trial evidence was insufficient to convict.

III. Petitioner Bragg was denied due process by introduction of identification testimony that was based on a blatantly [suggestive] photographic lineup.

2

IV. Petitioner Bragg is entitled to relief where the state court unreasonably applied *Terry v. Ohio*, 392 US 1 (1968) and/or *Mathis v. United States*, 391 US 1 (1968), where the trial court erred in denying Petitioner's motion to suppress evidence related to the unlawful seizure of Petitioner's cell phone in violation of his Fourth Amendment right against unreasonable search and seizure.

V. Petitioner Bragg was denied his Sixth Amendment right to confrontation by several introductions of legally inadmissible and highly prejudicial hearsay.

VI. Petitioner Bragg was denied his Sixth Amendment right to effective assistance of counsel by the failure to object to the prosecutor's introduction of hearsay evidence which denied petitioner [the] opportunity to confront and cross examine witnesses against him.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty

Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state

court arrives at a conclusion opposite to that reached by the Supreme Court on a question

of law or if the state court decides a case differently than the Supreme Court has on a set

of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An

"unreasonable application" occurs when "a state court decision unreasonably applies the

law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103.  A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

### III.  Discussion

### A.  Claim # 1.  Petitioner is not entitled to habeas relief on his claim that the judge erred in failing to declare a mistrial based on alleged juror misconduct.

Petitioner claims that the trial court judge erred in denying his motion for a mistrial based on two incidents of alleged juror misconduct.  Petitioner first claims that a juror, who was ultimately excused as an alternate, informed the judge that she recalled watching a television news broadcast from three years earlier which indicated that petitioner had been "picked up" or arrested in Ohio.  Petitioner secondly notes that the judge was informed that the court clerk had overheard a juror or jurors mention the name "Shannon,"

suggesting that the jurors may have been discussing the case amongst themselves before the case was submitted to the jury.

At the beginning of the third day of trial, the judge informed counsel that a juror had mentioned to the clerk that she recalled news coverage concerning petitioner's case from several years earlier.  Defense counsel asked that the juror be brought into court for questioning without the other jurors being present.  The juror stated she recalled watching the eleven o'clock news three years prior and heard a story about petitioner being picked up in Ohio.  The juror stated that this information would not affect her ability to continue to sit as a juror.  The prosecutor advised the juror that he and defense counsel agreed that the jury was not going to hear any evidence about any person being picked up in Ohio.  The juror indicated she told other jurors she remembered hearing about the case on the news and that other jurors were present when she told this to the court's clerk.  The juror said she followed the trial court's instructions not to talk about the case with other jurors, and she had not talked to the other jurors about what she had remembered.  The juror believed that her removal from the rest of the jurors for questioning had been "subtle." (Tr. 8/1/2013, pp. 4-12).

Defense counsel moved for a mistrial based on the juror's representations. (*Id.,* p. 14).  The judge observed that no one requested further expansion of the record and the juror had not violated the court's instruction not to discuss the case with other jurors. (*Id.*, p. 17).  Defense counsel argued he needed to know if other jurors had heard the juror's comment.  In the alternative, defense counsel requested that he be allowed to question the court's clerk. (*Id.*, pp. 18-20)  Upon questioning, the court clerk testified he went into the jury room to ascertain that all the jurors were present when a juror turned to him and

told the clerk she had a question.  Several of the jurors overheard the exchange between this juror and the clerk.  There was no mention of the State of Ohio during this conversation.  Instead, the juror told the court clerk that she recalled hearing about the case in the news and wanted to know whether that fact would impact her ability to sit on the jury. (*Id.*, pp. 20-22).  After the clerk testified, defense counsel indicated he was not concerned that other jurors had been tainted, but he wanted the juror excused prior to deliberations.   The judge stated he would take the dismissal of the juror under advisement. (*Id.*, pp. 23-24).

Later that same day, the court clerk informed the judge that although the juror had not mentioned anything regarding Ohio in his presence, the juror informed him that she had disclosed the subject matter concerning Ohio to other jurors.  Defense counsel renewed his motion for mistrial.  The judge suggested that the best way to handle the matter would be to have the juror come back and clarify what was said, but there was no request to have the juror brought back to court for additional questioning and no request to question the other jurors.  The court denied the motion for mistrial, but invited defense counsel to review the videotape of the juror's comments to the court.(*Id.*, pp. 78-79, 83).

The following day, the judge told the parties he would reconsider the motion for mistrial from the perspective and presumption that the other jurors were privy to the comments by the previously questioned juror. (Tr. 8/2/13, pp. 145).  Later that same day, the judge indicated that the court clerk overheard jurors talking and heard the name Shannon.   Defense counsel argued that the jurors were not following the court's instructions and renewed his request for a mistrial. (*Id.*, pp. 227-28).

Petitioner's motion for a mistrial was denied.  The judge found that the specific juror

in question failed to comply with the court's instruction regarding discussing the case by discussing her memory of the news event with other jurors. Moreover, because the name "Shannon" was mentioned by a juror or jurors, the judge concluded that the jurors were discussing the case, but the extent of the discussion was unknown. The judge would not hold it against petitioner's counsel for failing to question the jurors on the issue because to do so would be the "kiss of death." Nonetheless, the judge found that the jurors had been attentive to the testimony and everyone had been alert and had asked questions. The judge concluded that the jury's breaches were "innocent or at worst, negligent," and had "not infected nor polluted or contaminated the jury's objectively preceding the Court's final instructions." The judge offered to give a special instruction regarding the alleged error, but defense counsel declined the offer. (Tr. 8/7/2013, pp. 5-10). The judge agreed with defense counsel's request to excuse as an alternate the juror that had made the comments about seeing a news report concerning petitioner. (*Id.*, pp. 77-81, 104).

The Michigan Court of Appeals rejected petitioner's claim:

Here, there is no suggestion that the newscast observed by the juror directly addressed defendant's guilt or innocence, or was substantially related to any material aspect of the case. Apparently, the juror learned nothing more than that defendant had been "picked up" in Ohio. The juror in question indicated that her judgment would not be affected by the newscast, and she was in fact dismissed as an alternate before deliberations. While the trial court presumed that the information had been shared with other jurors, it also reasonably concluded that any shared information had "not infected nor polluted or contaminated this jury's objectivity preceding the Court's final instructions." Moreover, during its preliminary instructions, the trial court instructed the jurors that they were not to consider evidence that came from anywhere other than the courtroom, including news reports. Before deliberating, the trial court instructed the jurors that they were to base their verdict "only on the evidence admitted during the trial" and that "any personal knowledge about a place, person or event" was not to play any role in their decision-making process. The court's instructions limited the potential for any prejudice, and juries are presumed to follow their

7

instructions.  Overall, on the facts of this case, one juror's viewing of a news broadcast, from which she learned nothing more than that defendant had been "picked up" in Ohio, did not necessitate a mistrial.

In the second instance of alleged juror misconduct, the trial court was advised that the court clerk had overheard a juror or jurors mention the name "Shannon."  Defendant maintains that this discussion demonstrates that the jurors were discussing the case, contrary to the trial court's instructions.  Absent a showing of prejudice to the defendant, a violation of the trial court's instructions not to discuss a case during the trial, except with other jurors during deliberations, is generally not a ground for a new trial. "The proper remedy is for the court to review the alleged violation to determine whether or not the jurors' impartiality had been affected by the jurors' discussion."

Here, although the mere mention of Shannon's name might have merited rebuke from the trial court, defendant has failed to set forth any facts that clearly establish an inference that he was actually prejudiced.  The court clerk reported hearing only the name Shannon, with no other information, and at that time the clerk reminded the jurors of the trial court's instructions about discussing the case.  As the trial court recognized, the parties declined to question the jurors and the extent of any further discussion was thus unknown.  After the matter was disclosed, the trial court reminded the jurors that they were not to "talk about the case amongst yourself [sic] or with anybody else."  Under the circumstances, the trial court did not abuse its discretion in denying defendant's motion for a mistrial.

*People v. Bragg,* 2014 WL 7217267, at * 3 (internal citations and footnote omitted).

A trial court has the discretion to grant or deny a motion for mistrial in the absence of a showing of manifest necessity. *Walls v. Konteh,* 490 F. 3d 432, 436 (6th Cir. 2007); *Clemmons v. Sowders*, 34 F 3d 352, 354-55 (6th Cir. 1994).

The Sixth Amendment guarantees the right to a trial by an impartial jury. *Duncan v. Louisiana*, 391 U.S. 145, 147-149 (1968).  The constitutional standard of fairness requires that a defendant in a criminal case have a panel of impartial, "indifferent" jurors. *Irvin v. Dowd*, 366 U.S. 717, 722(1961).

The question of whether a trial court has seated a fair and impartial jury is a factual

one, involving an assessment of credibility. *Gall v. Parker,* 231 F. 3d 265, 308 (6th Cir. 2000)(citing *Patton v. Yount*, 467 U.S. 1025, 1038 (1984)).  A state trial court's finding on the impartiality of a juror or a jury is a factual finding that is presumed correct under § 2254 unless a habeas petitioner can prove otherwise by convincing evidence. *Gall v. Parker,* 231 F. 3d at 334.

The judge's failure to declare a mistrial after the one juror informed him that she had watched a newscast about petitioner's arrest in Ohio did not render petitioner's trial fundamentally unfair, in light of the fact that the juror advised the trial court about the information that she received from the newscast, but assured the trial court that she could be fair and impartial. *See Zuern v. Tate,* 336 F. 3d 478, 486-87 (6th Cir. 2003).  Moreover, this juror was ultimately excused as an alternate and did not participate in deliberations.

To the extent that this juror may have mentioned the newscast about petitioner's arrest in the State of Ohio to the jurors, this would not necessitate a mistrial, in light of the fact that this reference constituted "only a minuscule part of the evidence against" petitioner. See e.g. *United States v. Harris*, 165 F. 3d 1062, 1066 (6th Cir. 1999).  Finally, the judge in his preliminary instructions advised the jurors to disregard news reports because they could be incorrect or misleading (Tr. 7/29/13, p. 134) and in the final instructions advised the jurors not to consider anything that had not been admitted into evidence. (Tr. 8/7/13, pp. 86-87).  A jury must be presumed to have followed a trial court's instructions. *See Weeks v. Angelone,* 528 U.S. 225, 234 (2000).  Petitioner is not entitled to relief on his first mistrial claim.

Petitioner is also not entitled to habeas relief on his second mistrial claim.

9

Assuming that some of the jurors may have engaged in pre-deliberation discussions of the case, petitioner would not be entitled to habeas relief because there is no clearly established Supreme Court law that prohibits premature jury deliberations. *See Middlebrook v. Napel*, 698 F.3d 906, 910 (6th Cir. 2012), as amended (Dec. 6, 2012). Petitioner is not entitled to relief on his first claim.

**B.  Claim # 2.  The evidence was sufficient to sustain petitioner's conviction for first-degree felony murder.**

Petitioner next contends that there was insufficient evidence of malice to sustain his conviction for first-degree felony murder.

The Michigan Court of Appeals rejected petitioner's claim:

In this case, the evidence demonstrated that defendant, armed with a gun, participated with Bostick and a third armed man in a robbery of Shannon under the guise of purchasing marijuana.  In response to Bostick's demand for the location of additional marijuana, Shannon denied having any more marijuana, but Lanier, who was being held at gunpoint, claimed that there was more in an upstairs apartment.   Upon leaving to search for the marijuana, Bostick threatened that if the marijuana was not there, he would call defendant and instruct him to shoot Lanier.  Defendant, still armed with a gun, remained in the apartment with Shannon and Lanier.   When defendant's telephone subsequently rang, Lanier immediately got up.  It may reasonably be inferred from this evidence that Lanier believed that defendant intended to carry out Bostick's threat, so he initiated a physical struggle with defendant as an act of self-preservation.  The struggle, which was intense enough to disrupt furniture in the apartment, migrated onto the sixth-floor balcony and, after continued skirmishing, Lanier went over the balcony.  From this evidence, a rational trier of fact could reasonably infer that defendant intentionally set in motion a force likely to cause death or great bodily harm when he participated in an armed robbery with two other armed men, held Lanier at gunpoint while waiting to receive word on whether he should shoot Lanier, and, after receiving a call, struggled with Lanier on a sixth-floor balcony, during which Lanier went over the balcony rail and fell to his death.

Although defendant argues that different inferences could be drawn from the evidence, it is the jury's role to determine what inferences can be fairly drawn from the evidence.   The evidence was sufficient to support

10

defendant's conviction of first-degree felony murder.

*People v. Bragg*, 2014 WL 7217267, at * 4 (internal citation omitted).

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. See *Cavazos v. Smith,* 132 S. Ct. 2, 4 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Therefore, for a federal habeas court reviewing the

sufficiency of evidence for a state court conviction, "the only question under *Jackson* is

whether that finding was so insupportable as to fall below the threshold of bare rationality."

*Coleman v. Johnson*, 132 S.Ct. 2060, 2065 (2012).

> Under Michigan law, the elements of first-degree felony murder are:
>
> (1) the killing of a human being;
> (2) with an intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm is the probable result (i.e., malice);
> (3) while committing, attempting to commit, or assisting in the commission of one of the felonies enumerated in the felony murder statute.

*Matthews v. Abramajtys,* 319 F. 3d 780, 789 (6th Cir. 2003)(citing to *People v. Carines*, 460 Mich. 750, 759; 597 N.W. 2d 130 (1999)).

The Michigan Supreme Court has indicated that "[A] jury can properly infer malice

from evidence that a defendant set in motion a force likely to cause death or great bodily

harm." *People v. Aaron*, 409 Mich. 672, 729; 299 N.W.2d 304 (1980); *See also Carines,*

460 Mich. at 759(internal citation omitted). "Malice may also be inferred from the use of

a deadly weapon." *Carines,* 460 Mich. at 759.

In the present case, there was sufficient evidence for a rational trier of fact to

conclude that petitioner possessed the requisite malice required to support his conviction

for first-degree felony murder. The evidence established that petitioner planned and

actively participated in an armed robbery while knowing that a firearm would be used.

Petitioner himself was armed with a firearm and pointed it at the murder victim during the

robbery. A number of cases have held that a defendant's participation in an armed

robbery, while either he or his co-defendants were armed with a loaded firearm,

manifested a wanton and reckless disregard that death or serious bodily injury could

occur, to support a finding that the defendant acted with malice aforethought, so as to

support a conviction for felony-murder on an aiding and abetting theory. *See Hill v. Hofbauer,* 337 F. 3d 706, 719-20 (6th Cir. 2003)(intent for felony murder "can be inferred from the aider and abettor's knowledge that his cohort possesses a weapon."); *See also People v. Carines,* 460 at 759-60; *Harris v. Stovall,* 22 F. Supp. 2d 659, 667 (E.D. Mich. 1998)*; People v. Turner,* 213 Mich. App. 558, 572-73; 540 N. W. 2d 728 (1995)*;overruled in part on other grounds People v. Mass,* 464 Mich. 615; 628 N.W. 2d 540 (2001); *People v. Hart*, 161 Mich. App. 630, 635; 411 N.W. 2d 803 (1987); *Meade v. Lavigne ,* 265 F. Supp. 2d 849, 858-59 (E.D. Mich. 2003).

Petitioner argues that there was no malice because he did not intend for the victim to fall from the sixth floor balcony.  The evidence established that during the robbery the victim attempted to escape, at which point he and petitioner got into a physical struggle that migrated outside to the balcony, where the victim fell over the railing to his death. The victim ended up on the balcony and falling over the railing only in an attempt to avoid possibly being shot by petitioner in the course of an armed robbery.  This evidence, if believed, would be sufficient to support the requisite malice aforethought to support petitioner's felony murder conviction. *See e.g. Williams v. Brooks*, 435 F. Supp. 2d 410, 424 (E.D. Pa. 2006).  When the petitioner participated in an armed robbery, "he took the risk that [the victim] might exercise [his] natural right of self-preservation." *People v. Anderson*, 147 Mich. App. 789, 793; 383 N.W.2d 186 (1985).  Petitioner is not entitled to relief on his second claim.

### C.    Claim # 3.    Petitioner's suggestive identification claim is procedurally defaulted.

Petitioner next contends that Shannon's identification of him should have been

suppressed as the fruit of a suggestive photographic identification. Respondent contends that the claim is procedurally defaulted because it was never preserved at trial. The Michigan Court of Appeals ruled that since petitioner did not object to the photographic array or to Shannon's in-court identification, the issue was unpreserved and would be reviewed for plain error. *People v. Bragg,* 2014 WL 7217267, at * 4.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). If petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). " '[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998).

The Michigan Court of Appeals clearly indicated that by failing to object to the photographic array or to Shannon's in-court identification, petitioner had failed to preserve

his claim.  The fact that the Michigan Court of Appeals engaged in plain error review of petitioner's claim does not constitute a waiver of the state procedural default.  *Seymour v. Walker,* 224 F. 3d 542, 557 (6th Cir. 2000).  Instead, this Court should view the Michigan Court of Appeals' review of petitioner's claim for plain error as enforcement of the procedural default. *Hinkle v. Randle,* 271 F. 3d 239, 244 (6th Cir. 2001).  Petitioner's third claim is procedurally defaulted.

Petitioner failed to offer any reasons to excuse the procedural default.  Because petitioner has not demonstrated any cause for his procedural default, it is unnecessary for the Court to reach the prejudice issue. *Smith*, 477 U.S. at 533; *See also Alexander v. Smith,* 342 F. Supp. 2d 677, 685 (E.D. Mich. 2004).  Additionally, petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider this claim as a ground for a writ of habeas corpus in spite of the procedural default.  Petitioner's sufficiency of evidence claim (Claim # 2) is insufficient to invoke the actual innocence doctrine to the procedural default rule. *See Malcum v. Burt,* 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003).  Because petitioner has not presented any new reliable evidence that he is innocent of this crime, a miscarriage of justice will not occur if the Court declined to review the procedurally defaulted claim on the merits. *See Alexander*, 342 F. Supp. 2d at 685.  Petitioner is not entitled to relief on his third claim.

**D.  Claim # 4.  Petitioner's Fourth Amendment claim is non-cognizable.**

Petitioner next claims that the trial judge erred in denying his motion to suppress evidence, including telephone records, relating to his cellular telephone.

A federal habeas review of a petitioner's arrest or search by state police is barred

15

where the state has provided a full and fair opportunity to litigate an illegal arrest or a search and seizure claim. *Stone v. Powell*, 428 U.S. 465, 494-95 (1976); *Machacek v. Hofbauer*, 213 F. 3d 947, 952 (6th Cir. 2000). For such an opportunity to have existed, the state must have provided, in the abstract, a mechanism by which the petitioner could raise the claim, and presentation of the claim must not have been frustrated by a failure of that mechanism. *Riley v. Gray*, 674 F. 2d 522, 526 (6th Cir. 1982). The relevant inquiry is whether a habeas petitioner had an opportunity to litigate his claims, not whether he in fact did so or even whether the Fourth Amendment claim was correctly decided. *See Wynne v. Renico,* 279 F. Supp. 2d 866, 892 (E.D. Mich. 2003); *rev'd on other grds* 606 F.3d 867 (6th Cir. 2010). Indeed, under *Stone*, the correctness of a state court's conclusions regarding a Fourth Amendment claim "is simply irrelevant." *See Brown v. Berghuis,* 638 F. Supp. 2d 795, 812 (E.D. Mich. 2009). "The courts that have considered the matter 'have consistently held that an erroneous determination of a habeas petitioner's Fourth Amendment claim does not overcome the *Stone v. Powell* bar.'" *Id.* (quoting *Gilmore v. Marks*, 799 F. 2d 51, 57 (3rd Cir. 1986)). Thus, an argument by a habeas petitioner that is "directed solely at the correctness of the state court decision [on a Fourth Amendment claim] 'goes not to the fullness and fairness of his opportunity to litigate the claim[s], but to the correctness of the state court resolution, an issue which *Stone v. Powell* makes irrelevant.'" *Brown,* 638 F. Supp. 2d at 812-13 (quoting *Siripongs v. Calderon*, 35 F. 3d 1308, 1321 (9th Cir. 1994)).

Petitioner was able to present his Fourth Amendment claim to the state trial court in his pre-trial motion to suppress. Petitioner was later able to present his Fourth

16

Amendment claim to the Michigan appellate courts. That is sufficient to preclude review of the claim on habeas review. *Good v. Berghuis,* 729 F. 3d 636,640 (6th Cir. 2013).

**E. Claims # 5 and # 6. Petitioner's Sixth Amendment right to confrontation was not violated nor was he denied the effective assistance of counsel.**

The Court consolidates petitioner's fifth and sixth claims because they are interrelated.

In his fifth claim, petitioner argues that his Sixth Amendment right to confrontation was violated by the admission of several out-of-court statements. In his related sixth claim, petitioner contends that trial counsel was ineffective for failing to object to the admission this evidence.

Petitioner first contends that his right to confrontation was violated by the admission of some 911 calls from Shannon's friend, who told the 911 dispatcher that someone was chasing Shannon with a gun. [1]

Out-of-court statements that are testimonial in nature are barred by the Sixth Amendment Confrontation Clause unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable by the court. *See Crawford v. Washington,* 541 U.S. 36 (2004). The Confrontation Clause, however, is not implicated, and thus does not need not be considered, when nontestimonial hearsay is at issue. *See Davis v. Washington,*

---

[1] Respondent contends that petitioner's first and second subclaims are waived and/or procedurally defaulted because petitioner's counsel failed to object. Petitioner claims that trial counsel was ineffective for failing to object to the admission of this evidence. Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claims, it would be easier to consider the merits of these claims. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

547 U. S. 813, 823-26 (2006).  In *Davis,* the Supreme Court ruled that statements taken by police officers during the course of police questioning are considered "nontestimonial," and not subject to the Confrontation Clause, when they are made "under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Id.* at 822.  In *Davis,* the Supreme Court held that statements made by a domestic abuse victim in response to a 911 operator's questions while the defendant was inside her home in violation of a no-contact order, in which the victim identified her assailant, were not "testimonial" and, therefore, were not subject to the Confrontation Clause, because the victim was speaking about events as they were actually happening, rather than describing past events, and the primary purpose of the 911 operator's interrogation was to enable police assistance to meet an ongoing emergency caused by a physical threat to the victim. *Id.* at pp. 826-28.  In so ruling, the Supreme Court noted "[A] 911 call....and at least the initial interrogation conducted in connection with a 911 call, is ordinarily not designed primarily to "establis[h] or prov[e]" some past fact, but to describe current circumstances requiring police assistance." *Id.* at p. 827.

The 911 calls from Shannon's friend were nontestimonial, because the friend was primarily describing events as they were happening and were made for the primary purpose of enabling police assistance to handle an emergency situation as it was still happening.

Petitioner next contends that his confrontation rights were violated when a detective read a written statement from Doleda Nunoo, who did not appear at trial.  A detective testified that Ms. Nunoo told the police that at 4:54 p.m., on the date of the offense, she

"heard a man saying, No, don't do that; man, no." Thereafter, Nunoo heard "boom, boom as if someone was fighting and struggling." Nunoo called the leasing office to make a complaint at 4:55 p.m. She said the struggle occurred until 5:24 p.m. (Tr. 8/6/13, p. 86).

Confrontation Clause violations are subject to harmless error review. *See Bulls v. Jones,* 274 F. 3d 329, 334 (6th Cir. 2001). In *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), the U.S. Supreme Court held that for purposes of determining whether federal habeas relief must be granted to a state prisoner on the ground of federal constitutional error, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict. In determining whether a Confrontation Clause violation is harmless under *Brecht*, a court should consider the following factors: "(1) the importance of the witness' testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of cross examination otherwise permitted; and (5) the overall strength of the prosecution's case." *See Jensen v. Romanowski,* 590 F. 3d 373, 379 (6th Cir. 2009)(citing *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)).

Petitioner has failed to show that the admission of Ms. Nunoo's hearsay statement had a substantial and injurious effect or influence on the verdict. Ms. Nunoo did not identify petitioner as one of perpetrators of the robbery or murder. Because Nunoo's statement did not implicate petitioner in the robbery or murder, its admission at trial was harmless error, particularly where there was other ample evidence linking petitioner to the crimes. *See U.S. v. Driver,* 535 F. 3d 424, 428 (6th Cir. 2008).

19

Petitioner next contends that his right to confrontation was violated when Shannon testified that Bostick made several statements to him about the crime.

For purposes of the Confrontation Clause, testimonial statements do not include remarks made to family members or acquaintances, business records, or statements made in furtherance of a conspiracy. *Crawford,* 541 U.S. at 51-52, 56.

Bostick's out-of-court statements to Shannon did not qualify as testimonial statements covered by the Confrontation Clause because they were casual remarks made to a friend or acquaintance and not one made to law enforcement. *See Deshai v. Booker,* 538 F.3d 424, 427 (6th Cir. 2008); *See also Jackson v. Renico,* 179 F. App'x. 249, 255 (6th Cir. 2006).

Petitioner lastly contends that his right to confrontation was violated by the admission of police testimony that Bostick gave petitioner's name to the police. Petitioner also complains that his confrontation rights were violated when the detective testified that petitioner's mother told her that a car registered in her name was used by petitioner.

The Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford,* 541 U.S. at 59, n. 9; *See also Tennessee v. Street*, 471 U.S. 409, 414 (1985)(defendant's rights under the Confrontation Clause were not violated by introduction of an accomplice's confession for the nonhearsay purpose of rebutting defendant's testimony that his own confession was coercively derived from the accomplice's statement). Indeed, "[I]n some circumstances, out of court statements offered for the limited purpose of explaining why a government investigation was undertaken have been determined not to be hearsay."

20

*United States v. Gibbs*, 506 F. 3d 479, 486-87 (6th Cir. 2007)(*quoting United States v. Martin*, 897 F. 2d 1368, 1371 (6th Cir.1990)).  Evidence that is provided merely by way of background or is offered only to explain how certain events came to pass or why law enforcement officers took the actions that they did is not offered for the truth of the matter asserted, and thus cannot trigger a Confrontation Clause violation. *See U.S. v.Warman,* 578 F. 3d 320, 346 (6th Cir. 2009)(*quoting United States v. Cromer*, 389 F.3d 662, 676 (6th Cir. 2004)).

In the present case, testimony concerning Bostick's identification of petitioner and petitioner's mother's statement that he sometimes used her car did not violate the Confrontation Clause because they were not offered to prove the truth of the matter asserted, but were only offered for the nonhearsay purpose of helping the jury to understand the officers' investigation.  Accordingly, petitioner is not entitled to habeas relief on his fifth claim.

The Court will also reject petitioner's related sixth claim.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be

21

sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id*.  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

With the possible exception of Ms. Nunoo's statement, the admission of the other statements did not violate petitioner's right to confrontation.  Because the admission of this evidence did not violate the Confrontation Clause, counsel was not ineffective for failing to object to its admission on this basis. *See e.g. U.S. v. Johnson,* 581 F. 3d 320, 328 (6th Cir. 2009).

The admission of Ms. Nunoo's statement was harmless error.  "The prejudice prong of the ineffective assistance analysis subsumes the *Brecht* harmless-error review." *Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009).  Because the admission of Nunoo's statement was harmless, petitioner was not prejudiced by counsel's failure to object to the admission of the statement. *See e.g. Bell v. Hurley,* 97 F. Appx. 11, 17 (6th Cir. 2004). Petitioner is not entitled to relief on his sixth claim.

**F. The Court denies the request for an evidentiary hearing.**

Petitioner has requested an evidentiary hearing.

A habeas petitioner is not entitled to an evidentiary hearing on his claims if they lack merit. *See Stanford v. Parker,* 266 F. 3d 442, 459-60 (6th Cir. 2001).  Because petitioner's claims lack merit, petitioner is not entitled to an evidentiary hearing.

22

## IV.  Conclusion

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability to petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *See also Millender v. Adams,* 187 F. Supp. 2d 852, 880 (E.D.

Mich. 2002).   The Court will also deny petitioner leave to appeal *in forma pauperis*, because the appeal would be frivolous. *See Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## V. <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED that the request for an evidentiary hearing [Dkt. # 12] is **DENIED**.

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that leave to appeal *in forma pauperis* is **DENIED**.


s/Gerald E. Rosen_____
United States District Judge

Dated:  September 30, 2016

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 30, 2016, by electronic and/or ordinary mail.

s/Julie Owens_____
Case Manager, (313) 234-5135